IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JANUARY CUNNINGHAM, | ) | |
| | ) | |
| *Plaintiff,* | ) | No. 3:10-cv-00358 |
| | ) | Judge Nixon |
| v. | ) | Magistrate Judge Knowles |
| | ) | |
| WINDRIVER MANAGEMENT GROUP, | ) | JURY DEMAND |
| LLC, d/b/a THE LODGE SPORTS PUB, | ) | |
| and FRANK CALDWELL, | ) | |
| | ) | |
| *Defendants.* | ) | |

## ORDER

Pending before the Court is Defendants Windriver Management Group, LLC, d/b/a The Lodge Sports Pub ("The Lodge") and Frank Caldwell's Motion for Partial Summary Judgment, ("Motion") (Doc. No. 25), filed with a Memorandum in Support (Doc. No. 26). Plaintiff January Cunningham filed a Response in opposition to Defendants' Motion ("Response") (Doc. No. 34), to which Defendants filed a Reply ("Reply") (Doc. No. 41). Also pending is Defendants' Motion to Ascertain Status (Doc. No. 44), which is **GRANTED**.

For the reasons stated below, Defendants' Motion is **DENIED**.

### I. BACKGROUND[1]

Plaintiff is a former bartender at The Lodge, a venue offering food, drink, and entertainment operated by Defendant Windriver Management Group, LLC and owned by Defendant Frank Caldwell. Plaintiff began working at The Lodge in January of 2006 as an at-

---

[1] Facts in this section are taken from Defendants' Statement of Undisputed Material Facts (Doc. No. 27) and Plaintiff's Response to Defendants' Statement of Undisputed Material Facts (Doc. No. 35) unless otherwise noted.

1

will employee, and except for a two-month period, continued working at The Lodge until her termination on October 9, 2009.

During the course of her employment, Plaintiff dated another employee of The Lodge, William McClain. During the summer of 2009, Caldwell promoted McClain from part-time assistant manager to full-time manager, meaning that McClain would supervise Plaintiff, and it would no longer be possible to schedule the two during different shifts. Throughout the term of Plaintiff's employment, The Lodge maintained a policy prohibiting "personal relationships" between managers and staff members, aiming to prevent theft and to keep the work environment professional. The Court understands this policy to refer to dating or sexual relationships. Plaintiff alleges, however, that her dating relationship with McClain was exempt from this policy because it was adopted after both of them had started dating as coworkers at The Lodge.

During this same time period, Caldwell also promoted Chris Turner to assistant manager but Caldwell advised Turner that by accepting the position, Turner could not continue a personal relationship with Natasha Golden, a bartender at The Lodge. According to Plaintiff, Caldwell told Turner that Turner's relationship with Golden was different from Plaintiff's relationship with McClain. (Doc. No. 28-2 at 72-73.) Turner agreed to this condition and Caldwell allowed Golden to continue working at The Lodge for a short period of time until she found other employment. (*Id.* at 72.)

In September of 2009, Plaintiff and Turner had a verbal altercation, after which Golden called Plaintiff a "bitch" in the presence of other employees. In the aftermath of this altercation, employees felt compelled to choose sides between the sparring parties, creating significant tension at The Lodge. Plaintiff was never formally disciplined for this argument or for any other reason.

In late September of 2009, Plaintiff met with Caldwell to discuss her suspicion that Turner was stealing from the bar. (Doc. No. 26 at 10.) Plaintiff testified in a deposition that during this meeting, she specifically told Caldwell that he "intimidated" her and that she was "afraid to tell him" about Turner's alleged theft. (Doc. No. 28-1 at 78, 81.) Caldwell claims that Plaintiff's comments were in reference to the serious nature of the accusations she leveled against Turner. (Doc. No. 26 at 11.) Plaintiff, on other hand, testified that she had informed Caldwell on numerous other occasions that she was uncomfortable around him (Doc. No. 28-1 at 78, 87), and had also expressed similar fears to Mason Gordon, a former general manager at The Lodge (*id.* at 96). Sworn and signed affidavits by two Lodge coworkers allege that Plaintiff complained about Caldwell's sexual language and inappropriate touching, and that Plaintiff also confronted Caldwell specifically about this conduct. (Doc. No. 37 at ¶ 10; Doc. No. 38 at ¶ 13.)

According to Plaintiff, her complaints arose because Caldwell had consistently sexually harassed her with explicit comments and inappropriate touching. (Doc. No. 1 at ¶¶ 11-16.) Plaintiff alleges that, despite voicing her concerns to both Caldwell and Gordon, this hostile work environment persisted, substantively interfering with her ability to work. (*Id.* at ¶ 21, 30.) Plaintiff further testified that at some point before early October 2009, she contacted the Equal Employment Opportunity Commission ("EEOC"). (Doc. No. 28-1 at 22.) Both parties agree that Plaintiff did not tell anyone about this initial contact.

On October 7, 2009, a day after Natasha Golden's employment "was ended" pursuant to the workplace relationship policy, Caldwell expressed concern to McClain about Plaintiff's continued employment at The Lodge. Caldwell believed that McClain would feel more comfortable if Plaintiff left The Lodge, further arguing that McClain would be a more effective manager without Plaintiff as an employee. For those reasons, Caldwell decided to fire Plaintiff,

3

and on October 9, 2009, Plaintiff was terminated from employment at The Lodge. Caldwell alleges that he terminated Plaintiff because it was "the right thing to do for his business," while Plaintiff believes she was terminated in retaliation for complaining about the hostile work environment. Plaintiff never heard directly from Caldwell about why he fired her.

In a November 2, 2009 application for unemployment benefits, Plaintiff reported to the Tennessee Department of Labor that a conflict of interests over her relationship with McClain had led to her termination. On November 23, 2009, however, Plaintiff filed a Charge of Discrimination with the EEOC against The Lodge. Both parties agree that Caldwell was not aware of any complaint to the EEOC until he received the Notice of Charge of Discrimination filed on November 23, 2009.

Plaintiff received a Right to Sue Notice from the EEOC on February 4, 2010 (Doc. No. 1 at ¶ 7), and filed the Complaint in this case on April 9, 2010 (Doc. No. 1). The Complaint specifically alleges unlawful discrimination, retaliation, assault, and intentional infliction of emotional distress. (*Id.*) Defendants filed their Answer on May 3, 2010 (Doc. No. 7) and on March 18, 2011, Defendants filed their Motion (Doc. No. 25), their Memorandum in Support (Doc. No. 26), and their Statement of Undisputed Material Facts (Doc. No. 27). Plaintiff filed her Response to the Motion (Doc. No. 34) and her Response to the Statement of Undisputed Material Facts (Doc. No. 35) on April 8, 2011. On April 22, 2011, Defendants filed a Reply to the Plaintiff's Response. (Doc. No. 41.)

## II. LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides in part that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The general thrust of the inquiry a court must perform in considering a motion for summary judgment is whether there is a need for trial, in that genuinely disputed factual matters must be put to the fact-finder because they might reasonably be resolved in either party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id*. at 247-48. The substantive law involved in the case will underscore which facts are material, and only disputes over outcome-determinative facts will bar a grant of summary judgment. *Id.* at 248.

Parties must support their allegations as to the existence or absence of a genuine dispute as to any material fact: Rule 56(c)(1)(A) allows parties to support their claims by citing to materials in the record; Rule 56(c)(1)(B) allows them to support their claims by showing that "the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support that fact." While the moving party bears the initial burden of proof for its motion, the party that opposes the motion has the burden to come forth with sufficient proof to support its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

In ruling on a motion for summary judgment, the court must review the facts and reasonable inferences to be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Further, the Court will closely scrutinize the movant's papers while indulgently treating those of the opponent. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425, 427 (6th Cir. 1962) (citations omitted).

5

Case 3:10-cv-00358   Document 50   Filed 09/26/11   Page 5 of 18 PageID #: 314

## III. ANALYSIS

Defendants' Motion seeks summary judgment for only the retaliation claims alleged under Counts II and IV of Plaintiff's Complaint (Doc. No. 1), and not the discrimination claims alleged under Counts I and III, the intentional infliction of emotional distress claims alleged under Counts V and VII, or the assault and battery claim alleged under Count VI. The primary legal bases for the retaliation claims are the Civil Rights Act of 1964, 42 U.S.C. § 2000, *et seq.* [hereinafter Title VII], 42 U.S.C. § 1981, and the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101, *et seq.* [hereinafter THRA].

Defendants have moved for partial summary judgment as to Plaintiff's retaliation claims, which allege that Defendants violated both Title VII and the THRA by firing Plaintiff in retaliation for her complaints of a hostile work environment. Claims under Title VII and the THRA are analyzed identically, because the "stated purpose and intent of the [THRA] is to provide for execution within Tennessee of the policies embodied in the federal civil rights laws." *Campbell v. Fla. Steel Corp.*, 919 S.W.2d 26, 31 (Tenn. 1996); *see also Bailey v. USF Holland, Inc.*, 526 F.3d 880, 885 n.1 (6th Cir. 2008).

Title VII prohibits an employer from discriminating against an employee who "has opposed any practice made an unlawful employment practice by this title . . . , or [who] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title." 42 U.S.C. § 2000e-3(a). Plaintiff's claim falls under the "opposition" clause, because she alleges that Caldwell fired her in retaliation for her various complaints and concedes that neither Caldwell nor Windriver were aware of any potential EEOC involvement at the time of Plaintiff's termination (Doc. No. 35 at ¶ 42).

At the summary judgment stage, a plaintiff may produce either direct or circumstantial evidence that she will prevail on a Title VII retaliation claim. *Imwalle v. Reliance Med. Prods.*, 515 F.3d 531, 543- (6th Cir. 2008). When a plaintiff proffers direct evidence, which "requires no inferences to conclude that unlawful retaliation was a motivating factor in the employer's action," *id.* at 544, the burden is on the defendant to prove by a preponderance of the evidence that "it would have made the same [employment] decisions . . . absent the impermissible motivation." *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 709 (6th Cir. 2008). A plaintiff need not put on evidence regarding the defendant's retaliatory motive or pretext. *Christopher v. Stouder Mem'l Hosp.*, 936 F.2d 870, 879 (6th Cir. 1991).

When analyzing a retaliation claim based on circumstantial evidence, however, the Court must follow the *McDonnell Douglas* burden-shifting analysis. A plaintiff must first establish a prima facie case of unlawful discrimination, requiring that: "(1) [plaintiff] has engaged in Title VII-protected activity; (2) the employer had knowledge of this fact; (3) [plaintiff] suffered an adverse employment action; and (4) there is a causal connection between the protected activity and the adverse employment action." *Clay v. United Parcel Serv.*, 501 F.3d 695, 713 (6th Cir. 2007) (citing *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 563 (6th Cir. 2004)). If a plaintiff makes this showing, which is easily met in a retaliation case, the burden then moves to the defendant to put forth a nondiscriminatory reason for the adverse employment action. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). If the defendant meets this burden, the plaintiff must demonstrate, by a preponderance of the evidence, that the proffered reason was merely pretext for discrimination because it: (1) has no basis in fact; (2) did not actually motivate the adverse action; or (3) was insufficient to motivate the adverse action. *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003).

7

Both parties agree that this retaliation case involves circumstantial evidence, and should thus be analyzed under the *McDonnell Douglas* burden-shifting guidelines. Working under this framework, Defendants' Motion puts forth four arguments in favor of summary judgment on Plaintiff's Title VII retaliation claims: (1) Plaintiff's alleged complaints about the work environment at the Lodge do not rise to the level of protected activity known by Defendants; (2) based upon the Defendants' lack of knowledge of any protected activity undertaken prior to Plaintiff's termination, there was no adverse action taken by the Defendants against Plaintiff; (3) Plaintiff has provided no evidence demonstrating a causal connection between her termination and her previous complaints; and (4) even if Plaintiff were able to establish a prima facie case of retaliation, Defendants have articulated a legitimate, nondiscriminatory reason for terminating her employment.

   A. *Plaintiff's Complaints as Protected Activity Known to Defendants*

Defendants first argue that Plaintiff's alleged complaints to other employees at the Lodge do not constitute "protected activities known to defendants," and cannot be relied upon to satisfy the first two elements of the prima facie retaliation case. (Doc. No. 26 at 9-11.) Defendants assert that Plaintiff's complaints—both to Caldwell and allegedly to former manager Mason Gordon—are too vague to be protected under Title VII, and furthermore do not qualify as complaints against the defendants at all. (*Id.* at 11.) Defendants further assert that, prior to Plaintiff's termination, they had no knowledge of her EEOC Charge of Discrimination, and thus it does not qualify as a protected activity either. (*Id.* at 11-12.)

Plaintiff's Response asserts that she has produced sufficient evidence to demonstrate a pattern of sexual harassment complaints, known to Defendants, and satisfying the first two elements of the prima facie retaliation case. (Doc. No. 34 at 3.) In support of this argument,

Plaintiff points to depositions, affidavits, and declarations, documenting numerous conversations with Caldwell and Gordon, discussing how she was "uncomfortable" and "afraid" of Caldwell, and relaying how he would constantly make perverted comments to her. (*Id.*) Plaintiff failed to address the EEOC Charge in her Response (*id.*), and has otherwise admitted that Defendants did not know Plaintiff had contacted the EEOC prior to her termination (Doc. No. 35 at ¶ 42). Consequently, Plaintiff implicitly concedes that her communication with the EEOC cannot serve as the basis for her retaliation claim.

In their Reply, Defendants point out that the declarations of Mason Gordon and William McClain[2] are unsworn and unauthenticated, and thus do not satisfy the requirements of the Federal Rules of Civil Procedure, Rule 56. (Doc. No. 41 at 2.) To the extent that Plaintiff relies on these declarations, the Defendants argue, such reliance does not properly create a dispute as to a material fact, and summary judgment should be granted under Rule 56(e). (*Id.*)

As a threshold issue, Plaintiff's use of signed but unsworn declarations to support her Response is improper, even under the newly enacted Rule 56(c)(4). Rule 56 was amended in 2010 to improve procedures for deciding summary-judgment motions, and the Advisory Committee provided extensive notes to clarify the new requirements of Subdivision (c). Under the new Rule 56(c)(4) and pursuant to 28 U.S.C. § 1746, unsworn declarations can replace previously-required signed affidavits, and may be used to support or oppose summary-judgment motions in certain circumstances. *Id.* According to 28 U.S.C. § 1746, however, unsworn declarations executed in the United States must conclude with the following sentence, or something substantially similar: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)." The unsworn

---

[2] Doc. Nos. 39 and 40, respectively.

declarations of Gordon and McClain do not conclude with anything resembling what is required, and thus fail to satisfy § 1746. (Doc. No. 39 at 4; Doc. No. 40 at 2.) The allegations included in these declarations, mainly that Plaintiff complained of sexual harassment to both Gordon and McClain, cannot be used to support Plaintiff's Response.

Turning towards the substantive components of Defendants' Motion, the Sixth Circuit has held that a plaintiff's oppositional act satisfies the first element of a prima facie retaliation case—engagement in a protected activity—if it specifically identifies the type of Title VII discrimination at issue. *See, e.g.*, *Willoughby v. Allstate Ins. Co.*, 104 F. App'x 528, 530-31 (6th Cir. 2004); *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1313-14 (6th Cir. 1989); *Vargas v. Dillard's Dept. Store*, No. 3:07-0737, 2008 WL 2279929, at *11 (M.D. Tenn. May 30, 2008). A vague charge of discrimination is "insufficient to constitute opposition to an unlawful employment practice," and will not support a successful Title VII retaliation claim. *Booker*, 879 F.2d at 1313-14. Furthermore, a complaint must be made in the good faith belief that the opposed practice is illegal, but need not be made directly to a supervisor or even another employee. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 579-80 (6th Cir. 2000). To satisfy the second element of the prima facie case, however, the complaint must ultimately reach the employer.

For example, in *Booker*, the plaintiff wrote a letter to his supervisor, claiming that he was the victim of discriminatory "ethnocism," but the Sixth Circuit held that this vague complaint could not alone qualify as opposition to an unlawful employment practice. 879 F.2d at 1313-14. Similarly, in *Willoughby,* the Sixth Circuit held that a letter written by a white plaintiff contesting his demotion by merely pointing out that his employer hired a high percentage of African Americans did not qualify as opposition. 104 F. App'x at 530-31. Moreover, in *Longs*

*v. Ford Motor Co.,* 647 F. Supp. 2d 919 (W.D. Tenn 2009), the district court found that an internal complaint, lodged by the plaintiff and alleging that it was "discriminatory to allow certain employees to leave early," neither referred to a protected class nor provided facts sufficient to create an inference of a particular type of discrimination; it did not qualify as a protected activity under Title VII. *Id.* at 924, 933. The plaintiff in *Longs* also filed a separate letter, however, which specifically referenced age and race discrimination, as well as federal antidiscrimination laws, and the court found that this letter *did* constitute a protected activity under Title VII. *Id.* at 933.

This District has applied the same standard to retaliation cases involving sexual harassment. In *Vargas*, the plaintiff lodged both verbal and written complaints against a fellow employee who had allegedly sexually harassed her. 2008 WL 2279929, at *11. Notwithstanding the plaintiff's personal belief that she was being sexually harassed, the complaints at issue never mentioned sexual harassment. *Id.* Rather, the plaintiff criticized the work ethic of other employees and complained generally of the intrusive presence of one coworker in particular. *Id.* at *3. In ruling on this issue, the court reasoned that the "opposition" clause does not protect all oppositional activity, and held that the plaintiff's complaints were not sufficiently specific to satisfy the prima facie retaliation case under Title VII. *Id.* at *13-14.

Here, Plaintiff alleges that she specifically complained about Caldwell's sexual harassment on several occasions to at least two different people. (Doc. No. 34 at 3.) It is undisputed that in late September of 2009, Plaintiff approached Caldwell to report that Lodge manager Chris Turner was stealing from the bar. (Doc. No. 26 at 10; Doc. No. 28-1 at 78, 81.) During this meeting, Plaintiff told Caldwell that she was "intimidated" and "afraid" of him, leaving her reluctant to approach Caldwell. (Doc. No. 28-1 at 78, 81.) At no point in this

11

conversation did Plaintiff mention sexual harassment, nor do her comments create an inference that sexual harassment was at issue. This conversation alone is not sufficient to satisfy the first element of a prima facie retaliation case. Similarly, Plaintiff alleges that she told Mr. Caldwell that she feared him on several other occasions (*Id.* at 96), but, again, this is too vague to rise to the level of a protected activity under Title VII.

In a sworn affidavit, however, Plaintiff's coworker Scott Gordon alleged that he witnessed Plaintiff tell Caldwell that his conduct towards her was inappropriate and unwanted. (Doc. No. 38 at ¶ 13.) According to Gordon's affidavit, Plaintiff's comments came in response to Caldwell reaching out and touching her inappropriately. (*Id.*) Unlike the vague complaints of being "intimidated" or "afraid," Plaintiff's alleged remarks in this instance focus on a specific and inappropriate act of alleged sexual harassment. If proved at trial, this affidavit could enable a reasonable jury to find the first element of the prima facie case satisfied. In a second sworn affidavit, Lodge coworker David Driver claimed to have heard Plaintiff complain "about Frank Caldwell's treatment of [Plaintiff] including complaints about the sexual language he used and touching her." (Doc. No. 37 at ¶ 10.) This complaint, too, creates a genuine dispute as to a material fact, considering its specific nature, and its mention of sexual language and inappropriate touching. Finally, in her deposition, Plaintiff alleged that she had multiple conversations with former manager Mason Gordon about inappropriate sexual comments made by Caldwell. (Doc. No. 28-1 at 96, 99.) Although Plaintiff provides few details of these conversations, if proved at trial to refer specifically to sexual harassment, a reasonable juror could find that they constituted a protected activity.

Though several of these alleged complaints may satisfy the first element of the prima facie retaliation case, the second element requires that Defendants knew this protected activity

12

was taking place. While there is no evidence that Defendants knew of the complaints alleged in Driver's affidavit, (Doc. No. 37 at ¶ 10), and the excerpts of Plaintiff's deposition in the record do not show that Mason Gordon ever informed Defendants of Plaintiff's complaints, Scott Gordon's affidavit alleges that Plaintiff complained directly to Caldwell about a specific incident of harassment, (Doc. No. 38 at ¶ 13). More specifically, Gordon states that he recalled witnessing Caldwell inappropriately touching Plaintiff, followed by Plaintiff telling Caldwell "something along the lines that that was inappropriate and that she did not like it." (*Id.*) Such allegations are sufficient to create a genuine dispute as to a material fact with respect to the first two elements of the prima facie retaliation case—that Plaintiff engaged in protected activity and that Defendants knew that Plaintiff engaged in protected activity—and thus defeat Defendant's first argument for summary judgment.

B. *Adverse Action Taken by Defendants*

For an employment action to be considered adverse, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006) (citations omitted).

Defendants concede that termination of one's employment is an adverse employment action. (Doc. No. 26 at 13.) However, they argue that Plaintiff's termination in this instance does not amount to an adverse action under the law because Defendants lacked any knowledge of Plaintiff's protected activity prior to her termination. (*Id.* at 13-14.)

As noted above, there is a genuine dispute as to a material fact with respect to the first two elements of Plaintiff's prima facie case. Because a reasonable jury could find that

13

Defendants had knowledge of Plaintiff's protected activity, it is also possible that a reasonable jury would find that her termination was due to Defendants' knowledge of this activity. With the termination of Plaintiff's employment clearly constituting an adverse employment action, a jury could thus find Plaintiff's termination to be an *unlawful* adverse employment action due to Defendants' knowledge of Plaintiff's protected activity under the law. Defendants' second argument in support of summary judgment, therefore, fails.

  *C. Causal Connection Between Termination and Previous Complaints*

  Defendants' third argument in support of summary judgment is that Plaintiff has provided no evidence demonstrating a causal connection between her termination and her previous complaints. (Doc. No. 26 at 14-15.) Defendants reassert that they lacked knowledge of Plaintiff's protected activity prior to her termination, including specifically that Caldwell lacked such knowledge on October 7, 2009, the date that he decided to terminate Plaintiff, and argue that Plaintiff's numerous complaints to Caldwell about his behavior during the course of her employment are not causally connected to her termination due to their vagueness. (*Id.*) Furthermore, Defendants characterize Plaintiff's comments during her September 2009 meeting with Caldwell that she was "uncomfortable" and "intimidated by him," as being related to the information she was going to share with Caldwell about Turner's alleged theft, rather than to any possible complaints about sexual harassment or a hostile work environment. (*Id.* at 15.)

  Plaintiff, in her Response, argues that the temporal proximity between her comments to Caldwell and her termination—a mere two weeks—allow for an inference of retaliation in this instance. (Doc. No. 34 at 4.)

  The Sixth Circuit has stated that "temporal proximity, standing alone, is insufficient to establish a causal connection for a retaliation claim." *Tuttle v. Metro. Gov't of Nashville*, 474

14

Case 3:10-cv-00358  Document 50  Filed 09/26/11  Page 14 of 18 PageID #: 323

F.3d 307, 321 (6th Cir. 2007).  However, "temporal proximity, considered with other evidence of retaliatory conduct[,] would be sufficient to establish a causal connection" in certain circumstances.  *Id.*  In *Tuttle*, for example, the Sixth Circuit determined that a three-month period between the plaintiff's filing of an EEOC complaint and her termination, coupled with plaintiff's testimony about verbal threats she received from a manager ten days after her employer received notice of her EEOC complaint, constituted sufficient evidence to support a jury's finding of a causal connection.  *Id.*  Similarly, in *Singfield v. Akron Metropolitan Housing Authority*, the Sixth Circuit found that the plaintiff's termination, about three months after his filing of an EEOC charge, was sufficiently temporally proximate to protected activity such that an inference of retaliatory motive was proper.  389 F.3d 555, 563 (6th Cir. 2004).  Additionally, in *DiCarlo v. Potter*, the Sixth Circuit found that the passage of only three weeks between when plaintiff filed an EEOC complaint and his termination allowed for the plaintiff to establish the causal connection element of his prima facie case.  358 F.3d 408, 421 (6th Cir. 2004).

Defendants agree that temporal proximity between an employee's protected activity and termination can be circumstantial evidence of retaliation, but state that such proximity would only be relevant to Plaintiff's case if Caldwell made the decision to fire Plaintiff after "she had made a specific complaint about the hostile work environment," which was not the case here, according to Defendants.  (Doc. No. 26 at 15.)  However, as explained above, Plaintiff has provided affidavits of co-workers and personal testimony that suggest that Caldwell may have been aware of Plaintiff's complaints.  Moreover, as Plaintiff's Response highlights, only two weeks passed between her September 2009 conversation with Caldwell and her October 9, 2009 termination, a time period that is clearly within the bounds of what the Sixth Circuit has previously determined to be temporally proximate.  Such a short period, coupled with the

15

additional evidence from her co-workers, raises factual questions that are best left to the determination of the fact-finder and thus are sufficient to defeat a motion for summary judgment on the causation argument as well. Because there is a genuine dispute as to a material fact with respect to whether Caldwell knew about Plaintiff's protected activity, Defendant's third argument in support of a grant of summary judgment, therefore, fails.

### D. *Legitimate, Nondiscriminatory Reason*

Even if Plaintiff is able to make a prima facie case of retaliation, Defendants may still put forth a legitimate, nondiscriminatory reason for the adverse employment action in question. Here, Defendants assert that Plaintiff was terminated due to a violation of The Lodge's "workplace relationship policy," as well as the conflict that had developed among employees of The Lodge. (Doc. No. 26 at 16.)

Furthermore, Defendants argue that Plaintiff is unable to show that these reasons for termination were mere pretext. (*Id.* at 16-20.) They assert that Plaintiff is unable to demonstrate pretext under any of the three established methods: (1) the employer's reasons for termination are without any basis in fact, (2) the employer's reasons for termination are based in fact but did not motivate the termination, and (3) other employees who engaged in similar conduct were not fired. (*Id*. at 16, 18-19.) Defendants argue first that Caldwell had sufficient facts on which to base his decision to terminate Plaintiff, and note that McClain himself testified that Caldwell's decision was based on legitimate reasons related to business operations at The Lodge. (*Id.* at 17-18.) Second, again relying on McClain's testimony, Defendants argue that Caldwell's decision to terminate Plaintiff's employment was "reasonable" in light of the circumstances and that Plaintiff is unable to demonstrate that Defendants concealed any retaliatory motives. (*Id.* at 19.) Finally, Defendants assert that Plaintiff was treated exactly as other similarly situated employees

16

had been treated—namely, Golden, who had also violated the "workplace relationship policy," had also been fired. (*Id.* at 20.)

Plaintiff, in her Response, claims that she in fact was not violating the "workplace relationship policy" because her relationship with McClain had been "grandfathered" in by Defendants, and that in contrast to the relationship between Golden and Turner, McClain and Plaintiff had demonstrated that they were able to separate their work and personal lives. (Doc. No. 34 at 4.) Furthermore, in contrast to Golden, Plaintiff argues, she was not given time to procure new employment prior to losing her job at The Lodge. (*Id.*)

Defendants' Reply dismisses Plaintiff's argument about being "grandfathered in" as irrelevant on the grounds that Plaintiff was always an at-will employee of The Lodge and that Caldwell legitimately determined the arrangement—allowing Plaintiff and McClain to continue to be co-workers while dating—to be no longer functional, thus necessitating enforcement of the policy and termination of Plaintiff's employment. (Doc. No. 41 at 3.) Defendants also note that Plaintiff's Response did not address the issue of conflict that had developed among The Lodge's employees, which Defendants reassert was a legitimate basis for firing Plaintiff. (*Id.*)

Because Plaintiff is the non-moving party, the Court must review the facts and reasonable inferences to be drawn from those facts in the light most favorable to the Plaintiff. In doing so, it becomes clear that there remain enough open questions as to Defendants' proffered legitimate, nondiscriminatory reason for firing Plaintiff to create a genuine dispute as to a material fact such that Defendants' motion for summary judgment must be denied. Plaintiff presents evidence that her relationship with McClain had been "grandfathered in," a claim that Defendants dismiss as irrelevant. However, if proven to be true at trial, such a modification of the "workplace relationships policy" with respect to Plaintiff could lead a reasonable jury to believe that

17

Defendants' citation of the policy was mere pretext for an otherwise retaliatory termination. Furthermore, Plaintiff notes that there were differences in her treatment during her termination as compared to Golden, another employee who was fired for ostensibly the same violation of workplace policy. Again, if proven at trial, such differences could lead a reasonable jury to find that Plaintiff had been the victim of retaliation, rather than simply an evenhanded enforcement of a workplace policy. Finally, it remains unclear whether Defendants' second proffered legitimate, nondiscriminatory basis for Plaintiff's termination—that a conflict had developed among its employees—is true or mere pretext, in part because Plaintiff has failed to address this in her Response to Defendants' Motion.

In sum, there remain significant open questions with respect to both Plaintiff's prima facie case and Defendants' proffered legitimate, nondiscriminatory reasons for terminating Plaintiff's employment. Defendants, therefore, are unable to demonstrate that there are no genuine disputes as to material facts, and have not met their burden to warrant a grant of summary judgment in their favor.

## IV. CONCLUSION

In light of the above analysis, Defendant's Motion for Partial Summary Judgment as to Plaintiff's retaliation claim is **DENIED**.

It is so ORDERED.

Entered this the _____16th_____ day of September, 2011.

_____
JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT